U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 19 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

ROY HUDSON

versus

CLECO CORPORATION

CIVIL ACTION NO. 11-1699
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Roy Hudson ("Hudson"). See Record Document 119. Based on the following, Cleco's second motion for summary judgment is **GRANTED**.

### I. BACKGROUND[1]

Hudson, along with twelve other current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the United States Code, the Louisiana Employment Discrimination Law, and the Louisiana Commission on Human Rights. See Record Documents 1,

---

[1] Much of the background is adopted from the court's previous summary judgment ruling. See Record Document 113.

5 and 25. The court ruled on Cleco's first motions for summary judgment as to the plaintiffs, and the remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Hudson, the court dismissed his Title VII claims, state law claims, and Age Discrimination in Employment Act ("ADEA") claims. See Record Document 114. The court now addresses Hudson's remaining claims of failure to promote, discrimination, retaliation, and hostile work environment brought pursuant to 42 U.S.C. § 1981.

## II. ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant

---

[2]The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

2

demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Denial Of Overtime Discrimination Claims.**

Cleco hired Hudson as a Utility Worker in February of 1988, and he has worked a variety of positions at Cleco since then. See Record Document 119, Ex. C at 7-9, 11-13, 77. He claims that in 2007, Cleco discriminated against him by not allowing him to work two overtime assignments. For its overtime assignments, Cleco maintains a "call crew" which is a list of employees who may be called to work overtime when certain events at the plant demand additional manpower. See id., Ex. A at ¶ 3. Call crews are assigned either "primary" or "back-up" status on a two-week rotating basis. Typically, primary call crew members are called first when a need

arises. If additional assistance is needed, a member of the back-up call crew may be called. Sometimes, employees are called who are not on the scheduled primary or back-up call crew lists. This can occur when: 1) an employee with specific knowledge is needed; 2) an employee has recently worked on a problem relating to the equipment that needs repair; or 3) an employee needs to gain specific job experience on a piece of equipment. See id., Ex. A at ¶¶ 3, 4.

On September 16 and 17, 2007, Hudson was on the call crew list but Trent Alexander ("Alexander"), a Caucasian male, who was not on the call crew list, was called to work on a job involving the primary air heater. After Hudson complained about not being called, Marty Robinson ("Robinson"), Manager-Power Plant Maintenance for Coal/Lignite at Cleco's Dolet Hills Power Plant facility, investigated the matter. According to Robinson, he discovered that Alexander was called so that he could gain experience working on the primary air heater. Cleco claims this experience was to benefit his future dealings with contractors. See id., Ex. A at ¶ 5.

At another time in 2007, during a regularly scheduled power plant outage, a group of contractors and Cleco employees worked overtime on the "B" Bottom Ash Hopper. Hudson was on the call crew list at the time. According to Robinson, who again investigated the matter, supervisors decided that the group who had been working on the hopper should finish the job in order to maintain productivity and

efficiency. Only one individual was called to work overtime for a welding job. According to Cleco, only someone of a small stature could comfortably perform the welding job. Hudson volunteered but was told that he was too tall for the job. See id., Ex. A at ¶ 6. Hudson claims that the real reason he was denied the opportunity to work overtime on both occasions was because of his race.

Hudson's claims of employment discrimination brought pursuant to section 1981 are analyzed under the same standards as Title VII claims. See Decorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007). "An employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005). For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.[3] See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment

---

[3] Hudson does not allege that he possesses direct evidence in support of his discrimination claims with respect to the denial of overtime, nor does the court find any in the record.

> action.[4] If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[5]

Davis, 383 F.3d at 317 (citations omitted).

To establish his prima facie case under McDonnell Douglas, Hudson must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). Adverse employment actions include "only ultimate employment actions such as hiring, granting leave, discharging, promoting, or compensating." Id. at 559 (quoting Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002)).

The court does not find that Cleco's failure to allow Hudson to work overtime in these two incidents amounts to an adverse employment action. The detriment

---

[4] "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

[5] "[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

Hudson suffered was missing approximately twenty hours of overtime pay. Regarding the welding job, Hudson claims he missed about eight hours of overtime. See Record Document 119, Ex. A at 52-54. Regarding the air heater job, Alexander only worked twelve hours of overtime on that job. See id., Ex. I at D-80. Conduct that has such a tangential effect on Hudson's employment at Cleco does not rise to the level of an ultimate employment action. Therefore, Hudson has failed to establish a prima facie case for discrimination.

Assuming that Hudson could establish a prima facie case of discrimination, his claims still fail on the issue of pretext. Cleco has presented legitimate, nondiscriminatory justifications for each of Hudson's claims. First, Hudson was told that he was too tall for the welding job and a smaller individual could perform the work more comfortably. Second, Alexander was chosen for the air heater job to give him much needed experience for his future work projects. In his rebuttal of Cleco's justifications, Hudson admits many of the facts alleged by Cleco but denies that Cleco followed its policy for calling in workers for overtime. He further alleges that he was constantly denied the opportunity to work overtime but does not mention any other incidents other than the two explained above. Basically, the summation of Hudson's argument is that he admits Cleco's factual allegations except that the real reason he was denied overtime work was because of his race. Not once does he directly address

Cleco's justifications. Such conclusory allegations will not suffice to create a genuine dispute of material fact. See Ramsey, 286 F.3d at 269. Hudson has failed to show Cleco's legitimate, nondiscriminatory justifications for its actions were pretextual. Accordingly, Hudson's overtime claims of discrimination must be dismissed.

### C.     Miscellaneous 1981 Claims.

Hudson asserts in his deposition and in his complaint that the following facts give rise to claims of discrimination under section 1981. Hudson alleges that in 1991 Donald Lee, a white male, who had less qualifications and experience than he, was promoted to a power plant mechanic position over him. See Record Document 5 at ¶ 110. He provides no further information regarding this claim. Hudson alleges that Rick Shackleford ("Shackleford"), over four years ago, threatened an African-American employee after several African-American employees complained to human resources about Shackleford's perceived discriminatory promotional practices. See id., Ex. A at 28-31. Hudson admits he was not threatened by Shackleford with respect to this matter. See id. Hudson further alleges that, in either in 2000, 2001, or 2002, he was denied a power plant mechanic promotion because he was African-American. See id., Ex. A at 26, 84-86. In 2004, Hudson was demoted from Plant Technician to Utility Worker after failing the National Utilities Service test which

was required for him to continue working as a Plant Technician. Hudson claims he only failed because his test was regraded after it was determined that he passed the test and the regrading of his test was racially based. See id., Ex. A at 9-17. Hudson also alleges that in 1990 or in 1995 his supervisor would not allow him to take "exceptional" time off work to take care of his son who had surgery and he instead was required to use vacation time. Displeased with his supervisor's answer, Hudson asked higher level personnel about getting "exceptional" time off. It was decided that "exceptional" time off was appropriate for Hudson's situation. Thereafter, Hudson claims that his supervisor told him that he was displeased in the manner Hudson went over his head to get "exceptional" time off. See Record Document 119, Ex. C at 31-33; see Record Document 130, Declaration of Roy Hudson at ¶ 2.

Cleco argues that the aforementioned discrimination claims brought pursuant to section 1981 are untimely. Section 1981 does not contain a statute of limitations. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." Id. Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated

by [Louisiana Civil Code article] 3492."[6] Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section

---

[6]Under Louisiana anti-discrimination laws, the prescriptive period for employment discrimination claims is one year. See La. R.S. 23:303(D); Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ., 579 F.3d 546, 552 (5th Cir. 2009).

1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

Regardless of which version of section 1981 that Hudson's claims arise under, those claims have prescribed. Hudson filed his complaint on December 11, 2009. For his claims to be timely, they would have had to arise on or after December 11, 2005. None of his aforementioned claims arose within the longer four-year statutory period. Accordingly, Hudson's discrimination claims mentioned in this section have prescribed.[7]

---

[7] To the extent any of these claims can be construed as retaliation claims, they have still prescribed under the four-year statute of limitations. Furthermore, not once does Hudson address his retaliation claims in his opposition to Cleco's motion for summary judgment, therefore, he has effectively abandoned those claims. See Milton v. Boise Cascade, L.L.C., 2011 WL 285091 at *5 (W.D. La. 2011); see also Keenan v. Tejeda, 290 F.3d 252, 262-63 (5th Cir. 2002).

D.   **Hostile Work Environment.**

In order to establish a hostile working environment claim, Hudson must prove that:

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.
>
> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations omitted).

Hudson asserts the following in his deposition to support his hostile work environment claim: 1) in 2004, a white co-worker stated to another employee in Hudson's presence: "Derrick, there you go talking about them Cowboys again.

They're probably in the projects drinking 40s;"[8] 2) in 2004, an unknown individual, who Hudson believes is white, wrote on an elevator wall the phrase, "Roy Hudson suck cock;"[9] 3) in 2005 or 2006, a white co-worker told Hudson that he "must be selling drugs" because Hudson had a pager;[10] and 4) two white co-workers at some point told Hudson that he did not deserve the mechanic job because he was unqualified.[11] Toward the end of his deposition, Hudson stated that he did not know of any other facts that would support his hostile work environment claim. See Record Document 119, Ex. C at 79.

As mentioned, one of the elements of a hostile work environment claim is that the harassment must be racially based. The court fails to see how the second and fourth items mentioned above are racially based. Hudson states in his deposition that he does not know who wrote "Roy Hudson suck cock" on the elevator wall but he does know that a white person wrote it and that the action was racially based. See id., Ex. C at 24. He argues that a white individual wrote the phrase because an African-American would not have used the term "cock." See id. He offers no other proof that

---

[8] See Record Document 119, Ex. C at 21-22.

[9] See id., Ex. C at 23-24.

[10] See id., Ex. C at 18.

[11] See id., Ex. C at 78.

the writing was racially based other than his subjective belief that a white co-worker wrote it. The court finds that Hudson's reasoning is insufficient to show that the individual was white or, even if he or she were white, that the action was racially based. Regarding the statement that Hudson was unqualified for the mechanic job, Hudson presents no evidence that the statement was racially motivated other than the allegation that the statement was made. This is also insufficient to demonstrate racial animus.

Furthermore, Hudson's allegations, if true, are not sufficiently severe or pervasive to alter the conditions of his employment with Cleco. "[S]imple teasing, . . . offhand comments, and isolated incidents will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998). The court finds that the facts alleged by Hudson are nothing more than offhand comments and isolated incidents and do not indicate a severe or pervasive environment sufficient to alter the conditions of his employment at Cleco.[12]

In his opposition to Cleco's motion for summary judgment, Hudson asserts a litany of other allegations to support his hostile work environment claim. Most of

---

[12]Additionally, the first two items mentioned by Hudson occurred more than four years before he filed his complaint and, therefore, are untimely.

these allegations, however, are either conclusory statements of racial discrimination, inadmissible hearsay, unsubstantiated assertions, or statements that do not relate personally to Hudson. Of these numerous allegations, only a few are relevant to Hudson's claim. For example, he asserts that he was threatened with termination when he wanted to take time off from work to care for his son who had surgery. As the court already addressed previously, this claim occurred more than four years before Hudson filed his complaint and is, therefore, untimely.[13] He claims that he was constantly confronted with derogatory remarks such as "nigger" and "suckass" and that he had to deal with racial remarks on a constant basis by more than just one person; however, he does not give any specific incidents or examples in which this occurred. Such statements are conclusory and unsubstantiated and do not support his claim of hostile work environment. Accordingly, Hudson has failed to establish his claim of hostile work environment, and his claim must be dismissed.

---

[13] Hudson maintains that the continuous violation doctrine saves all of his untimely allegations. For the doctrine to attach to his claims, Hudson must show more than a series of discriminatory acts. See Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 352 (5th Cir. 2001). "'He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discrimination practice, rather than any discrete occurrence that gives rise to the cause of action.'" Id. (quoting Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998)). The court finds that Hudson has only presented evidence of isolated events and has not presented any evidence of an organized scheme of harassment.

## III. CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 119) is **GRANTED**. The court finds there is no genuine dispute as to any material fact with regard to any of Hudson's claims.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 15th day of February, 2013.

JUDGE TOM STAGG